[640 NYS2d 84]

In the Matter of LLOYD CLAREMAN (Admitted as LLOYD SAMUEL CLAREMAN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 4, 1996

### APPEARANCES OF COUNSEL

*Raymond Vallejo* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Frank H. Wright* of counsel *(Wright & Manning,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in the State

of New York by the First Judicial Department, as Lloyd Samuel Clareman, on April 11, 1977. At all times relevant to these proceedings, he has maintained an office within the First Department.

After his second year of law school, the respondent was a summer associate at the now defunct law firm of Webster & Sheffield, where he met one of the firm's star litigation partners, Harvey Myerson. After completing the Bar exam, he returned to the firm as an associate, working almost exclusively on litigation matters for Myerson. The Hearing Panel classified the relationship between Myerson and the associates of the firm as one of domineering manipulation. It found that Myerson virtually controlled the lives of the respondent and the other young associates at the firm by convincing them that their careers depended upon how he felt and what he said about them.

In 1983, while at Webster & Sheffield, the respondent became concerned about the legitimacy of a disbursement requested by Myerson on a matter over which the respondent had primary day-to-day responsibility. The request was for $70,000 in outside counsel fees for an attorney with whom the respondent was not familiar. Despite the risks to his career, the respondent brought the suspicious request to the attention of the managing partner of the firm. Although it later came to light that the requested disbursement was a fraud which the firm had agreed to ignore, the respondent incurred the wrath of Myerson for his actions, his mentor accusing the respondent of a rash act of betrayal.

Shortly after this incident, Myerson left Webster & Sheffield to become a partner at Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey. The respondent joined him in the move, and also became a partner at this firm. When this firm collapsed in 1987 and filed for bankruptcy, the respondent lost over $150,000.

In early 1988, Myerson formed Myerson & Kuhn, where the respondent became a litigation partner, while also serving on the executive committee which was dominated and controlled by Myerson. The respondent was also the attorney in charge of most of the litigation conducted on behalf of one of Myerson's major clients, Shearson Lehman Hutton. In April 1988, Myerson confided to respondent that Shearson had agreed to pay the firm a flat fee of up to $800,000 per month to handle its litigation. Under Myerson's direction and assurance of propriety, the respondent and another attorney, Mark Segall, were to

prepare monthly statements for Shearson, reflecting charges of at least $800,000, even when the actual monthly fees were considerably less. During the period from April 1988 through January 1989, respondent assisted in preparing statements reflecting about $1.2 million worth of excess time, a major portion of the $2 million Shearson was defrauded under this overbilling scheme. When the respondent expressed misgivings to Myerson about the billing practices, Myerson screamed at him: "You are just to do it. I am instructing you to do it". The respondent was subjected to numerous tirades from Myerson each time he was resistant to Myerson's orders. Ultimately, the firm went under, and again respondent paid all his debts. His full cooperation with government investigators, including testimony before the Grand Jury and in court, led to successful prosecution of Myerson (see, Matter of Myerson, 182 AD2d 242; 206 AD2d 299) and others. The Assistant United States Attorney assigned to the Myerson investigation noted that the respondent was the government's best cooperating witness. Meanwhile, adverse publicity surrounding the investigation made it difficult for the respondent to find work.

There are substantial mitigating factors in this case, including respondent's subordinate level of participation in the overbilling scheme, from which he received no personal financial benefit; his early, truthful, and complete cooperation; his immediate acknowledgement of wrongdoing and sincere expression of remorse; the significant adverse personal and professional consequences he has suffered as a result of his affiliation with Myerson; his hard-fought attempt to obtain restitution for Shearson; and his otherwise clean record and good moral character. Viewing the misconduct in light of these mitigating factors, the Hearing Panel recommended a public censure.

Respondent is guilty of engaging in misconduct involving dishonesty, fraud, deceit or misrepresentation (Code of Professional Responsibility DR 1-102 [A] [4] [22 NYCRR 1200.3]), which adversely reflects on his fitness to practice law (DR 1-102 [A] [8]). In Matter of Segall (218 AD2d 331) this Court sanctioned another attorney to a public censure for violation of the same disciplinary rules based upon the identical acts of misconduct at issue here. The same considerations which guided our decision in Segall lead us to conclude that a public censure is also appropriate here. In fact, we find the mitigating factors in the respondent's case to be even more compelling than those present in Segall. Accordingly, the motion to

confirm the Hearing Panel's report and recommendation is granted, and respondent is publicly censured for his misconduct.

SULLIVAN, J. P., MILONAS, ROSENBERGER, KUPFERMAN and NARDELLI, JJ., concur.

Respondent is publicly censured.